IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ACTIVEMAP LLC,<br><br>    Plaintiff,<br><br>v.<br><br>NORDSTROM, INC.,<br><br>    Defendant. | CASE NO. 2:26-cv-0163 |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Activemap LLC ("Activemap" or "Plaintiff"), for its Complaint against Defendant Nordstrom, Inc. ("Nordstrom" or "Defendant"), alleges the following:

### THE PARTIES

1. Plaintiff is a New York corporation with its principal place of business in Brooklyn, New York.

2. Upon information and belief, defendant Nordstrom, Inc. is a corporation organized and existing under the laws of the State of Washington, with its principal place of business at 1617 Sixth Avenue, Seattle, Washington, 98101. Upon information and belief, Defendant can be served with process through its Texas registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701.

### JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

4. Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under Federal statute, the patent laws of the United States (35 U.S.C. §§ 1, *et seq.*).

5. Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

6. Personal jurisdiction exists generally over Defendant because Defendant has sufficient minimum contacts and/or has engaged in continuous and systematic activities in the forum as a result of business conducted within the State of Texas and the Eastern District of Texas. Personal jurisdiction also exists over Defendant because each, directly or through subsidiaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, makes available, and/or markets products within the State of Texas and the Eastern District of Texas that infringe one or more claims of the Patents-in-Suit. Further, on information and belief, Defendant has placed or contributed to placing infringing products into the stream of commerce, both directly and through intermediaries (including distributors, retailers, authorized dealers, sales agents, and other individuals or entities), knowing or understanding that such products would be sold and used in the United States, including in this District.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b). For example, Defendant maintains multiple established places of business in the state of Texas and in this District, specifically including 170 E Stacy Rd, Allen, TX 75002.

8. Upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District

## BACKGROUND AND PATENTS-IN-SUIT

9. When in the late 1990's a New York City-based arts and photography magazine decided to celebrate its homebase in New York's Flatiron district by creating a map that allowed users to seamlessly wander through their neighborhood online, an idea was born. Patent applications followed swiftly, and eventually, Activemap LLC (now based in Brooklyn, NY) was formed.

10. The technology protected by the patents in the portfolio relates to website use of geographical maps capable of interacting with elements present in a list. The technology is foundational for store locator website functionality and has been widely deployed by companies in all regions and sectors.

11. The Activemap technology has resulted in the three preeminent world patent offices - USPTO, EPO, and JPO - all granting one or more Activemap patents, with patents being validated in France, Germany, Ireland, Italy, Netherlands, Switzerland, United Kingdom, Spain, Austria, Belgium, Luxembourg, Finland, and Sweden.

12. The Activemap technology has resulted in 30 licenses taken by industry leading companies in technology, automotive, directories, and retail.

13. Activemap has taken the related European Patents to German court twice and the defendants were found guilty of infringement.

14. Plaintiff is the sole and exclusive owner, by assignment, of United States Patent Nos.: (i) 7 8,468,464 (the '464 Patent); (ii) 10,444,943 (the '943 Patent); and (iii) 10,908,782 (the '782 Patent) (collectively, the Patents-in-Suit).

15. By operation of law, the Patents-in-Suit were originally issued and exclusively vested to Mrrs. Michael Abramson, Erika Jakubassa, Michael Grisham, and Geoff Atkin, as of their respective dates of issuance. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). Thereafter, by way of written instruments, all rights, title, and interest in the Patents-in-Suit have been assigned to Plaintiff. As such, Plaintiff has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

16. The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

17. The Patents-in-Suit family of patents has been cited over 300 times by all of the well-known industry leaders, including multiple citations from industry giants Apple, Google, Microsoft, Amazon, Mapbox, Micron, Sony, Facebook, Qualcomm, Nike, Honda, Hewlett-Packard, Huawei, Jaguar, Robert Bosch, Yahoo!, GM, IBM, Schlumberger, Mapquest, GE, HTC, Volkswagen, Boston Scientific, Blackberry, Boeing, Research in Motion, Nokia, Mitsubishi, Navteq, Agis, Open Text, Harman Becker, Avago, NEC, Adobe, Sun Microsystems, and Alpine Electronics.

18. The Patents-in-Suit each include numerous claims defining distinct inventions. No single claim is representative (for purposes of infringement or validity) of any other. Even a cursory review of the claims of the Patents-in-Suit reveals numerous patentably distinct elements which preclude any single claims from being viewed as representative.

19. The priority date of the Patents-in-Suit is at least as early as April 30, 2001. The Patents-in-Suit generally relate to electronic presentation and use of maps and other area representations (including geographic and non-geographic areas), and related information, and to the interactive use thereof.

20. As of the priority dates, the inventions as claimed were novel, non-obvious, unconventional, and non-routine. Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions, and in particular was *foundational* for store locator website functionality and has been widely deployed by companies in all regions and sectors. The functionality implemented by the software of the invention utilizes existing platforms and infrastructure. *See* '943 Patent at 2:17-20 and Fig. 1 (below).



**Fig. 1 - Fig. 9 of '943 Patent**

21. The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit. *See Stone Basket Innov.,* 892 F.3d at 1179 ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

22. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Patents-in-Suit to issue. In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims. *See K/S*

*Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

23. The claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art. *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 7255, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008). Likewise, the claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners. *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

24. The Patents-in-Suit have been in full compliance with 35 U.S.C. § 287 through either (1) actual notice with affirmative communication of a specific charge of infringement by a specific accused product or device or (2) providing constructive notice—i.e., appropriately marking its products. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Artic Cat II*"). Alternatively, the notice provisions do not apply because the patents are directed to methods and/or the patentee has never made or sold a patented article. *Id*.

## THE ACCUSED PRODUCTS

25. Upon information and belief, and as shown below, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides, at a minimum, hardware, firmware, and software applications, together with the systems and backend components, that enable communication with and among customer devices, which provide location determination, transmissions to Defendant servers, server-side storage and processing, authorization and sharing controls, map display, and alert generation, covered by the Patents-in-Suit. These components include, but are not limited to, networks, servers, cloud-based infrastructure, and associated software, firmware, and applications operating over wireless and traditional communications networks used to implement and support the Defendant interactive mapping ecosystem. Exemplary, but not limiting, products, systems and methods equipped with and that use the Defendant interactive mapping ecosystem, include the Defendant website https://www.nordstrom.com/.

26. Collectively, all the foregoing, including all configurations and augmentations thereof, are referred to herein as the "Accused Products."



**Fig. 2 - Screenshot of Defendant website used in the systems and methods offered, equipped and used with the Accused Products practicing the inventions of the Patents-in-Suit, available at https://www.nordstrom.com/stores?origin=footer**

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT    7



**Fig. 3 - Screenshot of Defendant website used in the systems and methods offered, equipped and used with the Accused Products, showing a portion of a map with user-selectable information responsive to the query shown in Fig. 2, and practicing the inventions of the Patents-in-Suit.**

## COUNT I
## Infringement of U.S. Patent No. 8,468,464

27. Plaintiff incorporates the above paragraphs by reference.

28. Defendant without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

29. Defendant thus has infringed at least claim 1 of the '464 Patent literally and/or under the doctrine of equivalents.

30. Further on information and belief, Defendant directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages. Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Products in an infringing manner.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                         8

          Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

31. As shown above in Figs. 2 and 3, Defendant is making, using, and offering for sale the Accused Products.

32. Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

33. On information and belief, Defendant has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '464 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Accordingly, Defendant direct and indirect infringement of the '464 Patent has been undertaken with knowledge of the patent, rendering Defendant liable for direct infringement, indirect infringement, and willful infringement.

34. In addition or in the alternative, Defendant, through its above described notice, indirectly infringed by way of inducing direct infringement by Defendant customers and/or contributing to the infringement by Defendant customers of the '464 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '464 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '464 Patent under 35 U.S.C. § 271.

35. Defendant, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringement that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

36. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

37. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

38. As one non-limiting example, and as shown in Figs. 2 and 3 above, Defendant, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '464 Patent by providing instructions to its customers and end users how to use the Accused

> Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

39. Defendant has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '464 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

40. The foregoing infringement on the part of Defendant has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '464 Patent.

41. Each of Defendant aforesaid activities have been without authority and/or license from Plaintiff.

42. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

43. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT II
## Infringement of U.S. Patent No. 10,444,943

44. Plaintiff incorporates the above paragraphs by reference.

45. Defendant without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

46. Defendant thus has infringed at least claim 1 of the '943 Patent literally and/or under the doctrine of equivalents.

47. Further on information and belief, Defendant directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Products in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

48. As shown above in Figs. 2 and 3, Defendant is making, using, and offering for sale the Accused Products.

49. Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

50. On information and belief, Defendant has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '943 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Accordingly, Defendant direct and indirect infringement of the '943 Patent has been undertaken with knowledge of the patent, rendering Defendant liable for direct infringement, indirect infringement, and willful infringement.

51. In addition or in the alternative, Defendant, through its above described notice, indirectly infringed by way of inducing direct infringement by Defendant customers and/or contributing to the infringement by Defendant customers of the '943 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing,

offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '943 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '943 Patent under 35 U.S.C. § 271.

52. Defendant, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringement that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

53. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

54. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that

the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

55. As one non-limiting example, and as shown in Figs. 2 and 3 above, Defendant, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '943 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

56. Defendant has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '943 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

57. The foregoing infringement on the part of Defendant has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '943 Patent.

58. Each of Defendant aforesaid activities have been without authority and/or license from Plaintiff.

59. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

60. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## COUNT III
### Infringement of U.S. Patent No. 10,908,782

61. Plaintiff incorporates the above paragraphs by reference.

62. Defendant without authority, did and continues to make, use, sell, offer to sell, and/or import into the United States the Accused Products as shown above.

63. Defendant thus has infringed at least claim 1 of the '782 Patent literally and/or under the doctrine of equivalents.

64. Further on information and belief, Defendant directly uses the infringing Accused Products at least because it assembled the combined infringing elements and makes them collectively available in the United States, including its Internet domain web pages.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Products as part of its regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Products in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Products.

65. As shown above in Figs. 2 and 3, Defendant is making, using, and offering for sale the Accused Products.

66. Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing systems and method operation of the Accused Products.

67. On information and belief, Defendant has a policy or practice against investigating third party patent rights, and its willful blindness qualifies for requisite knowledge of the '782 Patent. *See Estech Sys. IP, LLC v. Carvana, LLC*, No. 2:21-CV-0482-JRG-RSP, 2022 WL 17727752, at *2 (E.D. Tex. Sept. 26, 2022) (noting such an allegation is sufficient "because it provides fair notice of the allegation and the grounds upon which it rests"). Accordingly, Defendant direct and indirect

infringement of the '782 Patent has been undertaken with knowledge of the patent, rendering Defendant liable for direct infringement, indirect infringement, and willful infringement.

68. In addition or in the alternative, Defendant, through its above described notice, indirectly infringed by way of inducing direct infringement by Defendant customers and/or contributing to the infringement by Defendant customers of the '782 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing Accused Products for use in systems that fall within the scope of the claims of the '782 Patent. This includes without limitation, one or more of the Accused Products by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '782 Patent under 35 U.S.C. § 271.

69. Defendant, through its above-described notice, induced infringement under Title 35 U.S.C. § 271(b). Defendant performed actions that induced infringement that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

70. Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668

(Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

71. Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

72. As one non-limiting example, and as shown in Figs. 2 and 3 above, Defendant, with knowledge that the Accused Products infringe, knowingly and intentionally induced direct infringement of the '782 Patent by providing instructions to its customers and end users how to use the Accused Products, including specifically how to "share your location with others." The customer and end user is provided with the functionality to share that user's location with others.

73. Defendant has induced infringement by the customers and end users with the intent to cause infringement by them, in the alternative, with the belief that there is a high probability that they infringe the '782 Patent, but while willfully infringing and/or remaining willfully blind to the infringement.

74. The foregoing infringement on the part of Defendant has caused injury to Plaintiff. The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '782 Patent.

75. Each of Defendant aforesaid activities have been without authority and/or license from Plaintiff.

76. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed the Patents-in-Suit;

2. Awarding Plaintiff its damages suffered because of Defendant's infringement of the Patents-in-Suit;

3. Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of the Patents-in-Suit;

4. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

5. Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/* Christopher A. Honea
M. Scott Fuller
　Texas Bar No. 24036607
　sfuller@ghiplaw.com
Randall Garteiser
　Texas Bar No. 24038912
　rgarteiser@ghiplaw.com
Christopher A. Honea
　Texas Bar No. 24059967
　chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF**